Crum v. Loud.

CRUM v. LOUD et al.

I. Per LOWE, Ch. J., and DILLON and COLE, JJ.

1. **Conveyance:** COVENANTS: RESTRAINING WORDS: REFORMATION OF DEED. The covenants in a deed were as follows: "That we are lawfully seized of said premises; that they are free from incumbrances; that we have good right and lawful authority to sell the same; and that we do hereby covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever, *claiming through or under us.*" The concluding words, "*claiming through or under us,*" were in writing, the others printed. *Held,* without deciding whether these limiting words, in and of themselves, restrained all the preceding covenants, that the circumstances of the case, the situation of the parties, and the testimony, showed that such was the intention, and that the deed should be so reformed as to effectuate it.

II. Per WRIGHT, J., dissenting.

2. —— MISAPPREHENSION OF LEGAL EFFECT OF WORDS. The deed containing several and distinct covenants, the last general one is alone limited or restrained by the written words connected with it. The grantee did not understand the contract as claimed by the grantor, and has a right to stand upon the tenor of his deed. Or, at most, the grantor merely misapprehended the legal effect of the words selected and purposely used by him, and he cannot, therefore, escape liability.

*Appeal from Johnson District Court.*

WEDNESDAY, JULY 31.

SEPTEMBER 1, 1859, plaintiff made to defendants a deed, containing covenants "that we are lawfully seized of said premises; that they are free from incumbrances; that we have good right and lawful authority to sell the same, and that we do hereby covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever, *claiming through or under us.*" The concluding words " claiming through or under us," were written, the others printed. At this time there was an incumbrance in the form of a mortgage, made by Johnson, a former owner; of which, however, neither party had actual knowledge. Defendants were compelled to discharge this lien, and brought their action for breach of the covenants of said deed. Whereupon, plaintiff filed his bill in equity to restrain said law action; asking to reform said deed, setting forth the facts attending and preceding its execution; that the intention was to make a quitclaim, etc., and for general relief. Upon the issue denying all material averments, the cause was referred, testimony taken; report in favor of defendants; judgment *pro forma*, and plaintiff appeals.

*Rush Clark* and *William J. Haddock* for the appellant, filed a lengthy printed argument, from which the following points and review of authorities are condensed:

1. It is submitted that, upon the face of the deed in question, the restrictive clause, "*claiming through or under us,*" should be construed to qualify the covenant against incumbrances, because the express limitation of the more general covenant, "to warrant and defend against all claims," should be taken to control the previous special

covenant "against incumbrances," included within it. A previous covenant against incumbrances, standing without limitation, is inconsistent with a subsequent covenant of warranty, as restricted, and under the settled rule, the latter covenant will control the former. Upon the whole deed, the more reasonable construction would be, that the covenants throughout, are limited to the acts of the grantors. The written clause of restriction, following the general covenant of warranty, should be taken to control the printed covenant inconsistent with it. " The broadest and most effective of the covenants contained in American deeds, is that of warranty, which in some of the States is the only one in general use." 2 Washburn on Real Property, 659. In *Funk* v. *Cresswell et ux.* (5 Iowa, 65), the court say, " The question in this case is, whether the covenant of general warranty, in the form in which it is given in the Code, section 1232, includes a covenant against liens or incumbrances, outstanding at the time of the conveyance. We are of opinion that it does." And such was the conclusion upon careful and repeated examination.

The same rule, in broader terms, was again announced in *Van Wagner* v. *Van Nostrand* (19 Iowa, 426) — " That the general covenant of warranty was intended 'to include and imply all the usual covenants in a deed of conveyance in fee simple.' The plaintiff upon the covenant (of general warranty) has all the rights which he would have had, if the conveyance had contained express covenants of seizin, freedom from incumbrances, right to convey and the like."

The general covenant of warranty in the deed in this case, is substantially the same as the form adopted by the statute. If, as was said by this court, such general covenant does " *include and imply* " the covenant against incumbrances, it is difficult to conceive how the restrictive

clause shall be made to apply to the covenant of warranty, and not to the other covenant at the same time. What purpose could each serve independently of the other? To give reasonable effect to the words of restriction at all, they must be taken to control the covenant in all its bearings and in respect to any and all claims *not* made "under or through the grantors." The words of limitation in their terms apply to all incumbrances and defects in title, and not to particular ones. *Cole* v. *Hawles*, 2 Johns. Cases, 203; 10 Mo. 482.

The rule adopted by the learned authors is, that a subsequent limited covenant is held to restrain a previous general covenant, where the covenants are inconsistent. Now unless the covenants in question here are held to be diverse in their nature and to relate to different subjects, the one must needs qualify the other to make them consistent. They can only be made to stand consistently, by applying the clause of restriction to both, unless, indeed, the restriction is to be disregarded.

In the examination of cases outside of our own State, the character imputed to the covenant of general warranty under the policy of our statute should be kept in mind. And it will be made clear that the cases which, at first blush, seem to be against us, are not applicable, except that they afford a rule, the converse of which is true in the light of the decisions in *Funk* v. *Cresswell*, and *Van Wagner* v. *Van Nostrand* (*supra*).

Of the rules adduced by Sir E. Sugden, from the adjudged cases, as determining how far the restrictions in one covenant affect another, two are applicable to this case, and stated thus:

" When the *first* covenant is general, a subsequent limited covenant will not restrain the generality of the preceding covenant, unless an express intention to do so appear, or the covenants be inconsistent."

Crum v. Loud.

" When the covenants are of divers, natures, and concern different things, restrictive words added to one shall not control the generality of others, although they relate to the same land." 2 Sugden on Vend. 632–635.

It will be found from the cases cited by the author, that these rules have their foundation in the usual forms of covenants peculiar to English conveyances. For example, in *Norman* v. *Foster* (1 Mod. 101), Lord HALE said: "If I covenant that I have a lawful right to grant, and that you shall enjoy notwithstanding any claiming under me, these are several covenants, and the first is general and not qualified by the second." And to this WYLDE, J., agreed, and said that " the first covenant went to the *title*, and the other to the *possession.*" The covenants usual in England have each a distinct purpose, and the covenant of warranty " is not used." But it must be remembered that " the covenant of warranty by an innovation upon the common law has been converted into a personal covenant, and affords a remedy, as well against a defective title, as any disturbances thereupon. *Funk* v. *Cresswell*, 65.

In *Miller* v. *Horton*, M'Clel. 647, it was held, that prior general covenants for good title and right to convey were qualified by subsequent ones for quiet enjoyment and freedom from incumbrances restricted to the seller and persons claiming under him. But, in *Smith* v. *Compton*, 3 Barn. & Adol. 189, a similar case in principle, the former case was overruled, the court holding that it was not certain that, in the peculiar conveyance before them, the absolute covenant for title was inconsistent with a qualified one for quiet enjoyment. The conclusion seems to be arrived at in the case last cited, that a general covenant will not be held to be qualified by others, unless connected with them, or the covenants be inconsistent, but that a particular covenant may restrain a general one by intendment.

The learned author, Mr. Dart, in reference to the first of the above propositions of Sir E. Sugden (which, he remarks, is disputed by another), says, that it "is hardly accurate; for, although a prior general covenant will not, it appears, be restrained by a subsequent limited covenant having a different object, yet, when the two covenants relate to the same object, restrictive words in the second may, it seems, control the generality of the first." Dart's V. & P. (marg. p.) 873.

In *Brown* v. *Tomlinson* (2 G. Greene, 525), the Supreme Court of this State determined, that general covenants of seizin, etc., implied by the statute then in force, from the words "grant, bargain and sell" were not controlled by an express covenant to warrant against claims arising from or under the grantor. The decision is put upon the peculiar statute, declaring that the words "grant, bargain and sell should, unless restrained by express terms," be construed to be covenants of "seizin," "freedom from incumbrances done or suffered by the grantor," and "for further assurance." In respect of the covenants so implied, the court say, "There is no connection between the third and the two preceding covenants. They are made in different parts of the deed without any connecting word;" and the court hold, that the covenants were not in conflict. *Contra,* 23 Ill. 56; 10 Mo. 482; 7 Miss. (S. & U.) 427. No one of the cases cited in *Brown* v. *Tomlinson,* to which we have access, goes so far as to hold that a subsequent restricted covenant does not qualify a previous covenant of the same nature, relating to the same object, included in it or inconsistent with it. We can only infer what opinion the court held, as to the nature of the covenant of warranty. Of the particular cases cited by the court, we remark that, in *Hesse* v. *Stevenson, Gainsworth* v. *Griffith, and Howell* v. *Richards,* the covenants in

question were of different import, as always construed by the English courts.

It was said in *Howell* v. *Richards*, that the covenants " for title," and " right to convey," are connected covenants and " of the same import and effect, and directed to one and the same object, and the qualifying language of the one may, therefore, properly enough *be considered as virtually transferred to and included in the other.*"

The cases of *Roebuck* v. *Duprey*, 2 Ala. 535 ; *Gates* v. *Caldwell*, 7 Mass. 68 ; *Alexander* v. *Schneiber*, 10 Mo. 460 ; *Estabrook* v. *Smith*, 6 Gray, 572 ; *Roe* v. *Heath*, 23 Tex. 614, concede that where the covenants are inconsistent or in conflict, the limitation of one will control the other. In 4 Dall. 436, same.

Upon the face of this deed, we insist that the most reasonable construction to be given to the whole instrument, will be to apply the restrictive clause to the covenants entire, as part and parcel of the covenanting portion of the deed. *McNear* v. *McComber*, 18 Iowa, 12. In that case the granting clause was in *writing*, the covenant to warrant and defend the title was *printed ;* and it was held that the written matter should be taken as reflecting the true sense of the parties, the parts of the deed being inconsistent. An instance quite analogous to that is the case now under argument ; we believe we can offer no stronger argument in support of our own position than to cite that case. 2 Parsons on Cont. (1st ed.) 28. In construing the deed the court will look at surrounding circumstances. 7 Ired. 497; 9 Casey, 124; 7 W. & S. 41; 12 Col. 148.

2. If the foregoing propositions should not be sustained, then the deed should be so reformed as to restrict the covenants according to the intent of the parties. 2 Sugden on Vendors, 536; *Van Wagner* v. *Van Nostrand*, 19 Iowa, 427; *McNear* v. *McComber*, 18 Iowa, 14; *Morris*

v. *Whitcher*, 20 N. Y. 41; 1 Denio, 125, and 16 N. Y.; *Hunt* v. *Rousmanier's Adm.*, 8 Wheat. 215; 1 Pet. 13. In *Warburton* v. *Lauman* (2 Greene, 426), it was said: "It is the intention of the parties that will prevail in courts of chancery in preference to the mere act, when by that the objects of the parties could not be attained." *Evants* v. *Strode's Adm.* 11 Ohio, 480 (cited in *Longhurst* v. *The Star Ins. Co. supra*), professedly follows *Hunt* v. *Rousmanier's Adm.* In *Phœnix Insurance Co.* v. *Gurnee*, 1 Paige Ch. 278, it was held that a policy of insurance should be corrected to conform to the previous memorandum on which it was founded. The court will consider the deed as conforming to the agreement and relieve accordingly. 1 Wash. C. C. 422.

*William E. Miller* for the appellees.

The brief of appellees' counsel is not found on the reporter's file.

WRIGHT, J. — Appellant relies upon two general points: *First.* That the words, " claiming through or under us," limit and restrain all the preceding covenants, special as well as general; and that thus construed, plaintiff was not bound to protect the property against incumbrances suffered by others than himself or some one claiming under him. *Second.* That the testimony shows this to have been the intention, and that the deed should be reformed so as to effectuate such intention.

1. CONVEY-
ANCE:
covenants:
restraining
words.

A majority of the court concur in sustaining the second proposition, and do not, therefore, stop to discuss the first, insisting, however, that the language used is no slight circumstance indicative of the real contract and

Crum v. Loud·

intention. I do not agree in thus construing the testimony. I am also of the opinion that the ·law is against appellant on his first point, and that the judgment below should, therefore, be affirmed. As the case does not, in the opinion of the majority, turn on this, I only state that, in my view, here are several special and distinct covenants; that the last general one is alone limited or restrained by the words in writing, and that it is only when the intention to restrain a preceding by a subsequent limited covenant expressly appears, or when they are clearly inconsistent, that courts are justified in thus limiting the grantor's liability.

Having said thus much (and in view of the points upon which the case turns, to elaborate the question would be unnecessary), I proceed to state briefly the grounds which, in the opinion of the majority, show that the equities of the case are with the appellant.

Plaintiff loaned to one Bowles, seventy dollars, and took a deed for these premises as security. Bowles sold to defendants, and they borrowed of plaintiff an additional sum to complete their payment, he executing a bond, which recited that, "I hereby agree to sell and convey of warranty to, etc., and their assigns, all the title that James C. Bowles and his wife have this day conveyed to me by warranty." There is testimony tending to show that when the money was paid, plaintiff proposed to make a quitclaim deed, claiming that such was his contract; that there was some controversy, and that finally defendants agreed to accept such a deed; that he endeavored to obtain a printed form appropriate to the purpose, and being unable to do so, undertook to secure the same end, by adding the words found in the deed, at the close of the covenants in a deed of general warranty; and that the parties mutually understood and intended, in fact, to give and take a conveyance by quitclaim. And that this

was the real intention of the parties, it is claimed is shown, first, by the language of the deed itself, in connection with the fact that these words were written; second, by the tenor of the bond; third, by the title and circumstances under which plaintiff held; fourth, by the improbability that plaintiff would thus covenant, as to a title which he had not examined, and when the amount loaned bore so small a proportion to the full value of the land; fifth, by the positive testimony of plaintiff and another witness, as to the real intention and understanding; sixth, the flagrant and manifest injustice of holding plaintiff for incumbrances under his covenants, when defendants bought of Bowles and knew that plaintiff, as to them and their vendor, held the title as a mortgagee and trustee, having no claim or interest in the property beyond the amount thus loaned and secured. And conceding the rule that it was plaintiff's duty to make out his case by proof clear and satisfactory, the majority think that this has been done, and that he is entitled to the reformation of the contract asked. The rules applicable are not controverted. Each case stands very much upon its own circumstances, and I am instructed to thus state the result reached, which I do without entering at length into a discussion of the testimony or the law applicable.

I only add that the testimony, giving it the most favorable view for the plaintiff, leads me to an opposite 2. —— misapprehension of legal effect of words. result. The written testimony, so far from favoring, is, as I construe it, at war with plaintiff's theory. And as to the parol proof, whatever may have been plaintiff's intention, the defendants did not so understand the contract, but have a right to stand upon the tenor of their deed. Then again, at most, plaintiff merely misapprehended the legal effect of the words used, for he used the very words he intended to, and he cannot, therefore, escape liability. This rule

I regard well settled.   As the majority conclude, how-ever, that the equities of the case are with appellant, let the judgment below be

Reversed..